I wanted to comment because some of you may not be aware that the We the Patriots appeal that was scheduled to be heard this morning after the Maniscalco case has been adjourned for 13 days and will be heard at the end of February, at the end of October. Judge Sack also has a comment he'd like to make. Simply to make it clear that I sat two weeks ago on these cases or this case in the temporary restraining order or whatever state that was. It's hard to talk with masks on, excuse me. And I just want to make it clear that the reason I'm sitting on both is because that's the way the schedule was last April. I was scheduled to sit on that one and this one and not because I have any particular interest or desire, but I was here for both weeks. Very good. Can everyone hear all right? Yes. Yes? All right. Very good. We'll hear, get the name of the counsel from Ms. Rodriguez. We have Mr. Gelormino. Yes, I seem to recall that the district court had some problem with the name pronunciation also. Very good. All right. Very good. And Ms. Paulson. Correct. Very good. Then Mr. Gelormino, you can begin. Good morning, Your Honors. Good morning. May it please the court. The lead plaintiffs in this case, the appellants in this action, represent a group of thousands of New York City school teachers and Department of Education employees. Overall, they actually represent over 30,000, almost 30,000 New York City teachers and Department of Education employees who have had their constitutional rights violated by a vaccine mandate brought forward by Mayor de Blasio and the New York City Department of Education through the Due Process Clause and the Equal Protection Clause of the Constitution. In essence, they were given an ultimatum. I hope it's your time, but I hope at some point you will simply address where Judge Kogan got it wrong in his memorandum decision in order, because that's kind of where I start out, is by reading and trying to understand it and wondering what beef you have with what his conclusions were and his reasoning. You can do that anytime. You don't have to do it, but that's what I'm interested in. I certainly will. If you'd like me to address it now, Your Honor, I'm sorry. Well, could I ask a preliminary question? And that is, could you take a moment to describe the effect of the arbitration award and how that relates to your clients, the plaintiffs who you are representing here? Because often arbitration awards are binding, and I'm sure there must be something I'm overlooking in the nature of their separate action as it relates to the arbitration award. Your Honor, the arbitration award, from my understanding, just granted our clients the right to have a medical or a religious exemption considered. There were other smaller things as part of the arbitration award also, but I think that was the main gist of the arbitration award. They didn't deal with the people that don't have medical exemptions. They weren't asking for a basic—they weren't asking just to get out of the mandate, generally. Right, yes. It was just for these particular categories, medical and religious exemptions? That was the—I think that was the ultimate decision of the arbitration award. But your client would have been bound by the arbitration award generally, right? And I'm saying, you've explained it, and you've explained why you can make this argument now, and I understand that. But there's no question about all of the teachers being subject to the arbitration award. Yes, but the arbitration award doesn't consider— Doesn't cover your issue. The constitutional issue, yes. Okay. Well, to make sure I understand, then, it doesn't cover it, it doesn't address your issue. It doesn't address it. But was it raised in the arbitration and rejected by the arbitrator? And you're just not—or you're just saying, independently, it's incorrect for these reasons? I don't think they even discussed the— In other words, the issue wasn't before the arbitrator. Okay, thank you. Okay, thank you. And please, take your time. We have some flexibility this morning that we hadn't originally expected. Thank you. To answer your question, Your Honor, Judge Kogan wrote a beautiful 15-page decision. We feel he got it wrong in two different spots. I think the most important issue is the fact that they used a rational basis test, he used a rational basis consideration, when we think strict scrutiny should have been applied here for two reasons. One, teaching in the New York City public school system is a profession. It's not just a job. They have different qualifications. It's a fundamental right to have that profession. They all have to have—all the teachers in the school system, New York City school system, not the private school system, not the Catholic school system, but the New York City school system, all have to have master's degrees. Those teachers spend a great deal of money to go get those master's degrees, over $200,000 at times, which puts it in the category of a profession as opposed to just a job. And I think the second— So, you're saying basically that every time a school teacher, for whatever reason, is fired, that the government has to satisfy strict scrutiny in order to prevent that from happening? No, Judge, there's an arbitration process that they usually go through for the firing and laying off. I'm saying in this particular case— Do you have any legal support for that position? It's a very—it seems to me kind of a novel position. I understand a right to a livelihood, generally, but I'm not sure I understand a right to a particular job. Again, we consider this—I think it should be considered a profession as opposed to a job. Okay, well, even a profession. You have a right to a chosen profession, but that doesn't mean you have a right to a chosen profession in a certain location under certain conditions. You know, you can't take away a person's license to practice law arbitrarily. You can't take away a person's license to practice medicine, but you might be able to regulate where they practice, how they practice, and that kind of thing. Well, I think this has gone beyond the regulation. When you're asking people to put something in their body, their personal autonomy, to make a personal integrity decision, when the government is making that request, I think it goes beyond the regulation. Can we require you to wear a mask to come in here and practice your profession? Yes. Thank you. And if I may, Your Honor, to address that, this isn't an infringement. This isn't going into my body. If you asked me to put something in my body before you came in here, I would have an issue with that. I'm fully vaccinated. I'm not anti-vax. Most of the teachers are not anti-vaccination. They're anti-mandate. To come in here and have to put something in my body to go anywhere that the government's asking me, or not asking me, giving me an ultimatum to put into my body, I think that should automatically trigger a strict scrutiny review. This hasn't happened in our lifetime. And as far as we know, as far as the research indicates, there hasn't been an adult vaccine mandate since 1905 in Jacobson. And I think the most important part of the Jacobson decision was Mr. They're fine or take the vaccine. Here, we're all we're asking for is a choice, a very simple choice. One of the problems, I think, is that we don't really know. This is a preliminary stage. The evidence consists of broadcasts. So we don't know, for example, whether in 1947 there was a mandate for the smallpox vaccination. We don't know that. I don't know. And I was alive at the time and doubtless got one. I'm just saying we're kind of thin on facts here because it's pre-facts. It's preliminary and it's not. I would hope that if and when this goes forward, it'll be done on facts and not on the latest from NBC News. Well, I certainly I mean, I certainly we certainly have not in my lifetime had a vaccine mandate. And as far as our research shows, I don't see an adult mandate, adult vaccine mandate that has come anywhere since 1905. Oh, let me interrupt for a minute, if I may. I'm still having trouble getting to strict scrutiny. I mean, we have a public health emergency here in which our elected officials are making judgments based on the best information available to them about how to protect us all, how to protect our children and how to protect the whole society. And the New York public schools are a place where there is vast exposure of children who are unvaccinated and possibility of transmission to the rest of their families and so on. You seem, as I understand it, to be basing your argument that strict scrutiny should apply here on the notion that the right to be a professional school teacher in New York, which obviously is a very demanding profession and indeed a profession, that the infringement on that in any way is a fundamental infringement on the fundamental right and therefore requires strict scrutiny. But most of the cases that have been cited allow for regulation of professions and don't where one is not precluded from being a teacher and practicing in private schools and other subsets of schools or in other jurisdictions. The right is not permanently or irreparably infringed in your equal protection claim. Also, I don't understand how New York City public school teachers would be a protected class. So I'm having trouble getting past the notion that we would ordinarily, we would defer to the governmental decision as protective of society as a whole on a rational basis test. So if you could, in a very pointed way, identify for me either why your clients are a protected class or why this is an infringement of a fundamental right that gets you to a substantive due process claim such as you've made where your clients can still practice their profession for other employers within the state and elsewhere. Judge, all we're asking for is to be put in the same position as the other, the other teachers in the rest of New York State. Yes, they could possibly get jobs. It's late now, first of all. That's one of the biggest issues, right? This mandate came down and they probably can't. Let me be very clear then. The rational basis, first of all, you're saying strict scrutiny, but if we don't go with the strict scrutiny and we go with rational basis, you're saying it's irrational to single out. These teachers, when other teachers in the state do not have the same restrictions, not only of it. Yes, yes, you are. And that's that. Is that your claim for irrationality? It's one of them. But doesn't the doesn't the isn't the city's response to that, that New York City public school system educates a million kids and it's closely packed. The classroom is a large in size and a transmittable disease in one of those classrooms would be would be really devastating and also would require quarantining. And and there are all sorts of administrative problems if somebody comes down with COVID in a classroom, teacher or or or or student. Right. You're right. If I may, isn't that why isn't that a rational, rational basis? I mean, you know, maybe not the most narrowly tailored or even, you know, but but but why is it if you're if you're not doing if you don't make it to strict scrutiny? Why isn't that a rational basis? Your Honor, if I may share a personal antidote, I last weekend I was at a football game, a high school football game. There were 4000 people at the high school football game. Two thousand, three thousand children under the age of 18, they were high fiving, they were hugging, they were standing right next to each other. They were in each other's faces. This disease and thankfully, thank thank God this disease does not. The people who did that were there voluntarily. Yes. Knowing what was going to happen here. Parents, most parents have no choice if they don't have the money to put a kid in a private school, they put them in a public school and they want to be reassured that that the kid is going into a safe environment. Why is that another another reason? This disease, thankfully, does not affect children anywhere near the way it affects adults. I think all studies conclude that as a matter of fact, just recently, just a couple of days ago, the Times had to print a retraction because they said there were over nine hundred thousand children that were admitted to the hospital since this disease started. And the number was actually closer to sixty three thousand. Well, that may be true, but these are all policy factors that go into the policy determination. And what we're talking about here is a constant you're claiming a constitutional right and that, in other words, the margins, what are the boundaries of what what the state can do? And the state's free to not do any mandates. And some states have even acted anti-mandate laws, but not New York. And they've chosen a different path. And that's a policy determination, it seems to me. When you ask somebody to put something in their body, which is their personal autonomy zone, their personal bodily integrity, that goes beyond just a rule or a mandate that that alone. I think everyone agrees. And Judge Kogan also agreed that it is it is a requirement and a an ask by the government that is unlike really any other. On the other hand, you still have to establish under the principles of the case law that you have a section of due process claim that shocks the conscience or that you are a protected class to invoke strict scrutiny. And, you know, we've been having discussion about whether it satisfies rational basis. And I think as Judge Walker has been saying, it's difficult to conclude that it's not a rational decision, even even recognizing how intrusive it is to ask someone to put something in their body. But it's true here that the teachers have a choice to practice elsewhere and also to retain their health insurance for a year. There'll be more data at the end of the year to determine whether how the vaccines are going and how transmission is happening. And we get new data every day. I'm having difficulty seeing why even recognizing the problems of requiring vaccination as opposed to any other kind of mask wearing, for example, as we were saying that it is an irrational policy decision of the city. Do you have any quick rejoinder to that? And then we'll hear from the city. I do. My quick rejoinder to that is very simple. This hasn't happened in 115 years. Whenever the government is asking people to put something in their body, I believe strict scrutiny review should be appropriate. There should be a new line of jurors prudence. This has not happened in 115 years. And maybe we should take it out of the rational basis review area and put it in a strict scrutiny review type of decision. Because you're asking for people to invade their personal autonomy at any time that happens. I have to interrupt for just a second, though. We're asking for that. But people have a choice not to do it. They're not. They have the choice to practice their profession elsewhere in other circumstances. So it's not the government requiring. It's saying that if you want to do teaching in the New York City public schools, then you must be vaccinated. Isn't that correct? Teaching someplace else is a different situation. It doesn't require the license and the background of the secondary degree that these teachers spent $200,000 approximately to receive. Teaching at a grammar school, a private grammar school, while I certainly respect all those teachers, they don't have the same licensing requirements. So it's a little and put the New York City school system is pretty much the only game in town here for almost three quarters of the jobs that for the New York City school system. So it's it's a little bit different. It's a lot different when you have to have a master's degree as opposed to teaching in a preschool. OK, can I please go ahead? I'm passing over the notion that it's only 63,000 children who are sick. I'm just trying to get this straight. And page six of Judge Kogan's order, he's talking about what's what's protected by substance of the due process. And he says, quoting a case without irony named Heard 984 F. Third, 1087, he says here, plaintiffs must demonstrate that the state action was so egregious, so outrageous that it may fairly be said to shock the contemporary conscience such that the due process clause, quote, would not countenance it, even were it accompanied by full procedural protection. Close quote. Do you disagree with that? I don't disagree with the standard, but I do think that the first of all, 63,000 children, any child going to a hospital, I have children and I never want to minimize that. I never want to give that impression. But, you know, the death rate for children here is point zero zero one percent. So it's less than one hundredth of a percent where the illness rate is the death rate for a child. I'm saying the illness rate is a little bit more than that, but not much. And transmissions. I mean, transmission argument that I mentioned to you, but I'm not getting the audio. And I don't know if you could just come to me when the government, I think it shocks the conscience. Any time that the government is asking you to put a major body that should shock the conscience. It hasn't happened in one hundred and fifty years. The only time it might just be we do have a history of vaccine, but those those vaccines were tested for quite some time before we put them in the children's body. They weren't they weren't mandated one month after the FDA approved it. So any time the government is giving this is the ultimate intrusion. We could talk about the government intruding in a lot of things, but this is the ultimate intrusion. And to me, that shocks the conscience. Very good. Well, you'll have several minutes for rebuttal and we'll hear from the city. Thank you, Your Honor. Thank you very much. Good morning, Your Honors. May it please the court. Susan Paulson on behalf of the city appellees. Your Honors, I'll be very brief. You appear to understand very well the contours of the case here. But just very briefly, the district court providently exercises discretion in denying the plaintiff's request for a preliminary injunction in this court to affirm that decision. As a district court. If we do, then it goes back for further proceedings in the district court. Yes, Your Honor. That's correct. As the district court correctly concluded, the plaintiffs have no likelihood of success on the merits of their constitutional claims. They cannot get around the controlling precedent of the U.S. Supreme Court, affirmed by this court in Phillips, that there simply is no fundamental right to work for the city unvaccinated. Compulsory vaccines have been held by the Supreme Court as constitutional when necessary for public health and public safety. And there's no reason why the city's requirement that applies only to employment with a particular governmental entity and provides for religious and medical exemptions does not fall within this controlling precedent. Would you agree that perhaps Jacobson has been over read over the years? As your colleague points out, Mr. Jacobson had the option of paying a fine as opposed to getting vaccinated. And that suggests that the right may not be unlimited in the government to require vaccination. Would you agree with that reading? Yes, Your Honor. I'm not sure the right is completely unlimited, but I do think that the claims that are asserted here, the procedural, the substantive due process claim, the equal protection claim, do fail under the reasoning of Jacobson. And the further that its progeny under the Supreme Court's decision, and then the circuit decisions that have followed it from this court in Phillips, from the Fourth Circuit in Workman, and from the Seventh Circuit recently in Classen. Your Honor, there is no fundamental right to work. Do you have any idea how many teachers there are in the plaintiffs in the plaintiffs group that are unvaccinated but do not have can't claim an exemption? Your Honor, first of all, I would state that there has been no class certified in this case. I'm not asking for a class. I'm asking for your best estimate. Are we talking about 20 people? Are we talking about hundreds of people? Or are we talking about thousands of people unvaccinated who do not want to be vaccinated and can't claim an exemption? Right, so 95 percent or 96 percent of the teachers, I believe, are now vaccinated. OK, that's a good that's a good idea. One has to assume that the others just didn't want to be. I haven't claimed. Maybe I don't know how many of those. Some of those could claim an exemption. Yes, correct. Yeah. Exemptions. I'm sorry. I was just going to say exemptions here are different. From our other cases, because exemptions have to be accompanied with a clergyman's statement or a medical statement. It's not you can't just claim the exemption. That is correct, Your Honor. Right. And it's. I understand that if you do claim an exemption under the arbitration, the relationship of which to these proceedings is not entirely clear to me. But under the arbitration, if you do get an exemption, you're not allowed under that exemption to go to a school building. You have to do something else. That's that's correct. And so there is a process set forth in the arbitration award for seeking exemptions on medical and religious grounds, as well as an appeal process. The arbitration award also extends beyond merely the provision of exemptions. It provides certain job protections. As Your Honor recognized, if the if the employee chooses unpaid leave instead of separation, they are allowed to continue their eligibility for health insurance for that year. And in addition, during that year, if they get vaccinated before, I believe the date is December one, they can return to their job within a week. DOE is required to reinstate them. If they get vaccinated before September 5th, 2022, they can return within two weeks. So they have substantial job protections. But but but at the same time, they're not permitted to work during that time. So basically, they're cut off from income and they have mortgages to pay. If they choose the unpaid leave, that is correct. Right. So they're going to work elsewhere, but they can't work in the New York City system. No. And that that that lasts for a year. But you still can get your health care. And then after that, it's fine. It's it's sayonara. Well, I mean, as Your Honor recognized, it's hard to see into the future with this pandemic. Things have been changing, right? I mean, you know, in the best case scenario, it becomes a treatable disease, right? That some medication evolves and perhaps the mandate is no longer considered to be necessary. Right. We we can't know that from this vantage. Let me ask you this. What happens if if the vaccination becomes available to the children that these teachers teach and they they become vaccinated? Are you going to require the teachers to still be vaccinated? That's another situation that the commissioner of health would consider. And I don't know the answer to that. But I think that after there is final FDA approval for a vaccine for all the school children, the landscape will look differently. Can I claim that they can't be forced to be for the children's parents? Certainly. And we have seen challenges to compulsory vaccination requirements for school children, you know, in different circumstances. Again, again, with respect to the period during which someone doesn't want to be vaccinated, they can stay on for up to a year, I guess, 2022. And they have their health insurance during that time. But they are not permitted to work. Correct. Right. So they can't go to another school district and offer themselves up during that time. So they are foregoing their income, though they obviously have mortgage payments and other payments to make during that time. Is any consideration, I mean, I've been given, I didn't see any in the record to making some allowances for the need to have income during that time. I mean, I was concerned about the irreparable injury. Obviously, you know, it's kind of black letter law that a mere financial loss can be made up for after the fact. But, you know, if you're in the middle of foreclosure proceedings, that's a fairly serious injury. Why? Why is it required that they not work during that period? Well, it's required if they want to maintain their their unpaid leave status with the with the city. But as your honors have recognized, although the employment situations may not be directly analogous, as opposing counsel argues, they can seek employment both as public school teachers, although not within the city. But they can't. They'll be violating the terms of this. We're out of the New York City school system. They will not be violating the terms. They will be choosing separation over unpaid leave. They will be separating from their employment with the city. But they can't get back into the New York City system, can they? Well, sure, they could reapply. I mean, they have to reapply to lose their seniority. Yeah. OK. They could reapply at a later date. But again, if there were to be found an unlikely scenario that there was a constitutional violation here, they could the court could order the city to make them whole, both to restore seniority and any financial monetary loss that they suffered. I mean, isn't the direct. Now, isn't the direct answer, though, to the question of why this you're saying that they they basically get they do not get paid and they have a year with health insurance and that that terminates at the end of the year. Isn't the basic answer for why why the city is doing that is to coerce them to get shots, to get their vaccinations. You know, this will do it. You know, they've got mortgage payments, you know, it's it's it's rough stuff, but it's that's that's really what's going on here. The city is not trying to coerce the school teachers to get shots. It's trying to protect the schoolchildren and ensuring the safest environment under CDC guidance. And in order to do that, the means they're using is to try and get all of these people who are not getting vaccinated to get them vaccinated. In order to do that, they're choosing to retain the public school teachers who agree to be vaccinated in order to protect the children. Well, it's always been the case that if you are put on unpaid leave for a disciplinary or whatever reason, that in order to retain your seniority, you may not work during that time. I'm trying to understand whether this is a special policy related to the imposition of the vaccine requirement or if in other circumstances where teachers are put on unpaid leave, they are entitled to retain their health insurance, but also may not work elsewhere. Do you understand what I'm saying? I'm not 100 percent sure, but I also am afraid that I don't know the answer to that question about other types of unpaid leave. It doesn't take too much insight to realize that what this is is a coercion technique, that they're not permitted to work elsewhere if they want to stay in the city system because they might go work and they might be happy. They might not get vaccinated. And the school wants it, the system wants it both ways. They want to get them shot, have them vaccinated. And and this is all designed to force them to be vaccinated, isn't it? Your Honor, I appreciate you accomplish these noble goals that you've described in the pandemic and all of that. I'm assuming that that's that's the objective, that the objective is taken. It's just a ham-handed approach. It seems to me it's a rather I'm not saying it's not constitutional. Your Honor, it's not a ham-handed approach. The CDC has advised that all school teachers and school staff be vaccinated as soon as possible to protect children. I completely appreciate how it how it is. It feels coercive to the teachers. The city has no interest in losing committed career public school teachers, zero interest. But the city's primary interest is the education and protection of the school children. And in doing so, following the best guidance out there available to them in a way that they think will cause the least amount of disruption and facilitate a return to in-person education. The city does not want to lose its committed career public school teachers, but it wants to protect the children and maintain the continuity of their education and in-person learning. Well, I gave your opposing counsel a fair amount of extra time. Is there anything more you'd like to say that we have not touched on? Your Honor, in addition to the absence of any likelihood of success in the merits of the constitutional claims, the balance of equities clearly favors the city here. Being able to safely conduct in-person learning with minimal disruption and preserve the reliance interests of all the caregivers of the school children who enrolled them under the expectation that certain safety protocols would be in place clearly outweighs the allegations of irreparable harm, which can be repaired with make whole and monetary relief. I have an odd question. Yes, Your Honor. I mean, it may be a very odd question, but does the federal court have the power to require a city or state, in the other case, require them to pay back wages? I mean, or is there some sort of sovereign immunity which would not allow us to require payment at the end of the day? I am not 100% certain, but I do believe the city would, that's the court, I'm sorry, would be allowed to order the city to award back pay damages. Let me just ask, there's no exception here for, there's an exception for religion. There's an exception for medical reasons, a letter from the priest, a letter from the doctor, a letter from the rabbi, but then, but what about natural immunity? Why are they being required to be vaccinated? They've got natural immunity. Right. There's no exception for natural immunity, because the city, in exercising its judgment and making a policy decision, determined that that was not an, well, first of all, it wasn't negotiated in the arbitration award, but it also, in the commissioner's order, actually didn't address the exemptions, so I guess. It seems to me, there's an argument to be made that that's an arbitrary distinction, not to include people who already are immune. Your Honor, that would be a challenge to the arbitration award. The arbitration award, which was negotiated between the parties, arrived at these two exemptions. Certainly, you know, if you, if you, was that raised in arbitration? I don't know if it was raised in arbitration. Is there such a thing as natural immunity? I understand. That's pre, that's post-COVID. You've had the illness, you've had the illness. So, yeah, I understand, but using my source of information, which is some other television station, I suppose, but using my source of information, that kind of immunity is not as strong or as effective as immunity created by vaccinations. Yes, Your Honor. To the CDC and FDA sources that we cited in our brief, it's unknown how long natural immunity exists and the extent of it, so there certainly would be reasons not to include it. No, I understand. I mean, there's a, it's a judgment call. It is a judgment call, Your Honor. It's still not known how long the vaccine will last. That is correct. That is correct, Your Honor. I would ask that the district court's judgment be affirmed. Thank you very much. Thank you. Sir, you have three minutes to rebuttal. Your Honor, I've been coaching basketball and football on Staten Island since, for over 30 years, and I bring this up because when I hear people say to me, we're protecting the children, that is, what they're really saying is, you can't have a cogent argument otherwise. That stops everybody in its tracks of protecting the children. And like Your Honor referenced, this is nothing but a heavy handed coercion to get people, get these teachers vaccinated. As to your first question, Your Honor, the number of teachers before this case started and the DOE employees was almost 30,000, not a couple hundred, not a couple thousand, almost 30. I'm sorry, the number of what? Of unvaccinated teachers and Department of Education employees. Now, that number has changed in the last two weeks because they were forced to go back to work. But when this started, it was over almost 30,000, between 28 and 30,000. And 30,000 of how many? What's the total teacher? What's the denominator? I believe the teachers of the 28,000, I believe the teachers were 16 to 18,000 of it, and the rest of the employees were 10,000. How many teachers total in the system? I believe about 100,000, 120,000 employees, 130,000 total employees, 80,000 teachers. If there were 30,000 who were unvaccinated, isn't that an argument for why a vaccine mandate was needed? No, Your Honor, I respectfully disagree. It's a question. Hey, go ahead. Again, we go back to the choice issue, and we go back to the protecting the children issue, which we all agree, we always should protect children. Even the people that I'm coaching with, when they throw that on protecting the children for some absurd decision that they make. Here, again. No, wait, wait, wait, we're talking about people who all have the interest of children and of our whole community in mind. And so, you may feel that they're rejecting any other analysis, but with respect, I think that the arbitration process and the city's discussion here has shown a variety of concerns, as well as you have expressed a variety of concerns. And the question is, do we have a constitutional issue in which you have a likelihood of succeeding on the merits? So, I just wish you would take that into consideration. I certainly will, Your Honor. Nobody's trying to minimize protecting children. I have children. Or our community. Or our community. There's just a, we're not asking for something that's extraordinary. There are different ways to do that without violating people's constitutional rights to bodily integrity. Isn't that something, you say there are, you say there are. Yes. Isn't that precisely the kind of question that should be asked on the basis of facts during a trial? Or summary, shouldn't that, that's a question of fact, isn't it? And then we keep, we're not in a position, this is all preliminary, there has been no fact-finding, there's been no summary judgment motion, there's been no trial. I don't know whether what you say is right or wrong. It depends on which television program I watch last. I try to do, I personally try to do research, more research than just some television programs. I don't doubt that. But it's the court, it's a district court that finds facts. We don't. Right. I, you know, I believe Judge Kogan alluded to the fact that if in 10 or 15 years we find there's a problem with this vaccination and it affected people in a negative way, nobody's going to have their last laugh. And that's all we're asking for is some time for this, this vaccine to be tested more completely. Again, this hasn't happened in over a hundred years. So let's give it a couple of years before we mandate it. There's always a risk, you know, that's part of the calculus here. There's going to be a risk no matter what. I mean, you know, we had thalidomide once, that was a pill, but we've had other things that have gone sour with regard to medications. But, you know, you do the best you can with what you've got under the circumstances and in facing the problem that you face. And it seems to me that the Constitution doesn't restrict the state or the city's ability to do that unless you, you know, you've made some arguments, you made your best arguments. And I'm just having trouble with why this isn't rational basis and why it would be, I don't quite understand why your argument on strict scrutiny. And you said, in effect, that it would require a new line of authority to overrule, in effect, Jacobson and to develop a new regime for any time that the state is requiring a person to insert something into their body. Yes. And I think you've got a good point there. We're not the Supreme Court, so we don't normally develop whole new lines of constitutional doctrine. We're sort of bound by the decisions of the Supreme Court and our prior presidents. And that's really kind of where we are. We've got the existing framework. We're reasonably familiar with that. That's where we're trying to work within that. Well, given the existing framework, if using Jacobson as the basis of the existing framework, again, there was a choice there. There's always been a choice. All we're asking for is a reasonable choice, again, with the same goal in mind as the city, to protect the children. Testing options are a reasonable choice. It's considered reasonable almost everywhere else in the country. It's considered reasonable for the rest of the teachers in New York State. It's considered reasonable for the rest of our municipal workers who deal in a much riskier area because they're not dealing with children. They're dealing with the people that are actually more inclined to get the disease, the older people, people my age, people with comorbidities. So if we're going to, if Your Honors would consider using Jacobson as the standard, I would ask Your Honors to give us the same choice or a choice, just like Jacobson did. That's all we're asking for. All right. And these choices are very easily accomplished. Thank you very much. Thank you, Your Honor. Well argued both. I think we'll take the matter under advisement and get you a decision as soon as we can. Thank you. Thank you. Thank you very much. We will recess and reconvene at about 10 o'clock. Thank you.